OPINION
{¶ 1} Plaintiff-appellant Teva Pattison appeals from a summary judgment rendered against her on her claim against her employer, defendant-appellee Honda of America, for disability discrimination in employment. Pattison contends that she presented facts sufficient to demonstrate a genuine issue of material fact with regard to the issue of disability and unlawful discharge. For the reasons set forth below, we disagree and affirm the decision of the trial court.
 I {¶ 2} Pattison began working for Honda in 1988. In 2000, Pattison contracted a virus and was off from work from May 22 until June 28. She submitted an excuse form prepared by her family doctor, who diagnosed Pattison as suffering from a virus, vaginal pain, urinary tract infection and depression. Pattison's doctor prescribed Paxil in an effort to treat the depression. Pattison returned to work on June 29. On June 30, Honda closed for its yearly plant shutdown. Pattison worked on July 10, the day after the shutdown.
 {¶ 3} Of relevance to this appeal, Pattison was absent from work from July 11 through July 19. Pattison used an intermittent leave previously authorized by her gynecologist and Honda to cover this absence.[1] Pattison's husband, also an employee of Honda, requested a leave in order to care for Pattison. His leave request indicated that Pattison was off work due, in part, to anxiety.
 {¶ 4} Due to the discrepancy, Honda contacted Pattison to clarify the reason for her absence. Pattison confirmed that she had been off work for her chronic gynecological problem. Honda also contacted Pattison's family doctor, who indicated that Pattison was missing work due to depression.
 {¶ 5} Honda determined that Pattison had misused her intermittent leave for chronic gynecological problems to cover absences for other reasons and thus concluded that Pattison's request for leave from July 11 to July 19 should be denied. Honda further concluded that this was Pattison's second violation of the published leave policy and therefore terminated her employment.
 {¶ 6} Pattison filed suit against Honda, Diane Eyman, Deb Vance and "John/Jane Does 1-5" alleging that she was wrongfully terminated, in violation of R.C. Chapter 4112. Pattison alleged that Eyman, Vance and the unnamed defendants were "managerial and/or supervisory employees of Honda" and that they were separately liable for her wrongful discharge.
 {¶ 7} Following discovery, Honda filed a motion for summary judgment. In rendering summary judgment in favor of Honda, the trial court found that Pattison is not disabled. The trial court further found that Pattison was discharged for repeated violation of Honda's leave policy, not because of any disability. From this judgment Pattison appeals.
 II {¶ 8} Pattison's First Assignment of Error states as follows:
 {¶ 9} "The trial court erred in granting summary judgment to the defendants in this disability discrimination claim because the evidence proves that plaintiff suffered from disabling depression and that defendant failed to reasonably accommodate her disability and instead fired her because of her disability."
 {¶ 10} Pattison contends that the trial court erred by granting Honda summary judgment on her claim of disability discrimination. In support, she argues that she presented facts sufficient to demonstrate a genuine issue of material fact with regard to the issue of disability and wrongful termination. We disagree.
 {¶ 11} Our review of the trial court's decision to grant summary judgment is de novo. See Helton v. Scioto Cty. Bd. ofCommrs. (1997), 123 Ohio App.3d 158, 162. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. See State ex rel. Grady v.State Emp. Relations Bd., 78 Ohio St.3d 181, 183, 1997-Ohio-221, citation omitted.
 {¶ 12} R.C. 4112.02(A) makes it an unlawful discriminatory practice for any employer, because of the disability of any person, to discharge without just cause or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment. In order to establish a prima facie case of handicap discrimination pursuant to R.C. Chapter 4112, Pattison had to demonstrate that: (1) she was disabled; (2) an adverse employment action was taken by Honda, at least in part, because she was disabled; and (3) though disabled, Pattison can safely and substantially perform the essential functions of the job in question with a reasonable accommodation. Hood v. Diamond Prod., Inc., 74 Ohio St.3d 298,1996-Ohio-259, paragraph one of the syllabus, citation omitted.
 {¶ 13} To establish a claim of employment discrimination, Pattison must first establish that she is disabled. R.C.4112.01(A)(13) defines disability as a "physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of physical or mental impairment; or being regarded as having a physical or mental impairment." In determining whether a condition constitutes a disability, Ohio Courts have looked to federal law for guidance.Columbus Civ. Serv. Comm. v. McGlone, 82 Ohio St.3d 569, 573,1998-Ohio-410.
 {¶ 14} The Code of Federal Regulations provides guidance for the meaning of the term "substantially limits." The C.F.R. defines "substantially limits" as the following:
 {¶ 15} "(i) Unable to perform a major life activity that the average person in the general population can perform; or
 {¶ 16} "(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."29 C.F.R. § 1630.2(j)(1).
 {¶ 17} Not every physical or mental impairment constitutes a disability. DeBolt v. Eastman Kodak Co., 146 Ohio App.3d 474,486, 2001-Ohio-3996, ¶ 42. A disability determination must be made on a case-by-case basis. Hood, supra at 303.
 {¶ 18} "Factors considered in determining whether an impairment substantially limits a major life activity include: `(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.'" Yamamoto v.Midwest Screw Products, Lake App. No. 2000-L-200, 2002-Ohio-3362, ¶ 21, citing Section 1630.2(j)(2), Title 29, C.F.R.
 {¶ 19} "The Supreme Court of the United States has recently defined the phrase `substantially limits' even more narrowly by defining it as `an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must be permanent or long-term.'" Yamamoto at ¶ 23, quotingToyota Motor Mfg, Kentucky, Inc. v. Williams (2002),534 U.S. 184.
 {¶ 20} In her deposition, Pattison testified that during the periods in question she could not concentrate, think clearly or walk. The claim that she was unable to walk was based upon the fact that on many days she could not bring herself to get out of bed except to go to the bathroom. However, in her deposition she admitted that she was capable of bathing herself and brushing her teeth. She further testified that her vision and hearing were not impaired and that she was able to make some meals and share household chores with her husband Additionally, the record shows that on July 12, Pattison was able to spend at least one hour retaining an attorney with regard to a child custody case. She met with the attorney for another hour the following day. Pattison then appeared at a court hearing on the custody case on July 14. Although the hearing did not occur, Pattison was able to negotiate and execute a custody agreement. Further, the record shows that Pattison was able to complete a leave request form on behalf of her husband
 {¶ 21} Pattison's family doctor testified that Pattison was acutely disabled during the period from May through July of 2000 and that she suffered from mild to moderate depression that required medication. However, his testimony links the disability and depression to the fact that she was suffering from a debilitating virus during this time. The doctor also testified that he had no indication that Pattison could not care for herself during the month of July.
 {¶ 22} Finally, Pattison testified that she had suffered from depression for a considerable length of time. In fact, she testified that her depression began in 1992 or 1993. The record corroborates that she suffered from depression at least in 1993. From the record there is no evidence that she experienced any symptoms from 1993 until 1997 when she requested, and was granted intermittent leave for depression. The record indicates that Pattison had no problems with depression from February of 1998 until May of 2000. Of note, with regard to any depressive episodes prior to 2000, Pattison testified that she could not recall any specific incapacitation prior to the episode in 2000. Also, she testified that she had not suffered any symptoms following August 2000.[2]
 {¶ 23} There is no doubt that chronic depression can be a disability. See Hayes v. Cleveland Pneumatic Co. (1993),92 Ohio App.3d 36, 42. Furthermore, since we are reviewing a summary judgment, we must credit Pattison's testimony and conclude that she suffered from depression. However, given the record before us, we conclude that Pattison's depression did not constitute a disability as contemplated by statute. There is no testimony or evidence to support a finding that prior to May, 2000, the depression caused any impairment, let alone a substantial impairment, of any life activity. While Pattison testified that she was substantially limited during the period in question in 2000, we find that the record belies this conclusory assertion. It is clear that during the two-month episode in 2000, Pattison was able to work two days, deal with a child custody dispute and share in household chores. In short, even if a two-month episode were sufficient to meet the definition of disability, there has been no showing that Pattison suffered a substantial impairment of any major life activities during the two-month period in 2000 when she asserts she was disabled. To the contrary, the evidence in the record demonstrates the absence of any evidence that Pattison suffered from a substantial impairment of any major life activities at any time material to her cause of action.
 {¶ 24} Accordingly, we conclude that the trial court did not err in rendering summary judgment in favor of Honda. Pattison's First Assignment of Error is overruled.
 III {¶ 25} Pattison's Second Assignment of Error is as follows:
 {¶ 26} "The trial court erred in denying plaintiff the right to amend her complaint to identify a proper party whose name was wrongfully withheld in discovery by defendants."
 {¶ 27} Pattison contends that the trial court should have permitted her to amend her complaint to name another managerial employee of Honda as a defendant.
 {¶ 28} Given our disposition in part II above, we conclude that this Assignment of Error is moot.
 {¶ 29} The Second Assignment of Error is overruled.
 IV {¶ 30} Both of Pattison's Assignments of Error being overruled, the judgment of the trial court is affirmed.
Wolff and Grady, JJ., concur.
[1] Pattison suffered from a chronic gynecological problem, which necessitated that she miss work for several days per month.
[2] Pattison's deposition commenced in December of 2002 and continued in February, 2003.