OPINION
{¶ 1} Plaintiff-appellant, Gail Springer, appeals the decision of the Butler County Court of Common Pleas granting the motion of defendants-appellees, Fitton Center for Creative Arts and Rick Jones ("appellees"), to dismiss pursuant to Civ.R. 12(B)(6).[1]
 {¶ 2} The record on appeal reveals the following relevant facts: appellant was employed as a pottery studio manager and instructor at the Fitton Center for Creative Arts ("Fitton Center"). Rick Jones was her supervisor. On February 11, 2002, appellant suffered a work-related injury to her back, but was able to continue performing her work duties. On March 15, 2003, she again injured her back at work while lifting a box of clay. After the second injury, appellant was apparently unable to continue working and was diagnosed with a herniated disc and nerve impingement.
 {¶ 3} Appellant informed appellees that she would not be able to return to work prior to November 1, 2002. On September 10, 2002, she was informed by letter that her employment with Fitton Center was terminated. On October 2, 2003, appellant filed a complaint against appellees alleging wrongful termination in violation of state law, intentional infliction of emotional distress, and negligent infliction of emotional distress.[2]
 {¶ 4} Appellees filed a motion to dismiss for failure to state a claim pursuant to Civ.R. 12(B)(6), and on May 7, 2004, the trial court granted the motion as to all counts. This appeal followed, in which appellant raises the following three assignments of error.
 {¶ 5} Assignment of Error No. 1:
 {¶ 6} "The trial court erred to the prejudice of plaintiff-appellant in dismissing her wrongful discharge claim under civil Rule 12(b)(6)."
 {¶ 7} Assignment of Error No. 2:
 {¶ 8} "The trial court erred to the prejudice of plaintiff-appellant in dismissing her intentional infliction of emotional distress claim under Civil Rule 12(b)(6)."
 {¶ 9} Assignment of Error No. 3:
 {¶ 10} "The trial court erred to the prejudice of plaintiff-appellant in dismissing her negligent infliction of emotional distress claim under Civil Rule 12(b)(6)."
 {¶ 11} Because all three assignments of error concern similar rules of law and involve a similar analysis, we will consider them together.
 {¶ 12} To begin, a motion to dismiss tests the sufficiency of a complaint only. State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.,65 Ohio St.3d 545, 548, 1992-Ohio-73. A motion to dismiss is not designed to act as a determination of the merit of a claim. Fallang v. Hickey
(Aug. 31, 1987), Butler App. No. CA86-11-163. A court's only task in reviewing a motion to dismiss is to determine whether the allegations of the challenged pleading, if true, state a legal cause of action. Id. Accordingly, the decision to grant a motion to dismiss is reviewed de novo. Bell v. Horton (1995), 107 Ohio App.3d 824, 826.
 {¶ 13} When considering a motion to dismiss, a court is confined to the averments in the complaint, id., and it must "appear beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." O'Brien v. University CommunityTenants Union, Inc. (1975), 42 Ohio St.2d 242.
 {¶ 14} For purposes of a motion to dismiss, all factual allegations in a complaint are presumed true, Royce v. Smith (1981), 68 Ohio St.2d 106,108, and a court must examine the allegations, and all reasonable inferences therefrom, to determine if they support any basis for recovery, including recovery under legal theories not specifically mentioned in the complaint. Rogers v. Targot Telemarketing Services
(1990), 70 Ohio App.3d 689, 692.
 {¶ 15} Appellant's first assignment of error contends that the trial court erred in granting the motion to dismiss her wrongful discharge claim. We agree.
 {¶ 16} A cause of action for wrongful discharge can be brought pursuant to the common law tort of wrongful discharge in violation of public policy, and it can be brought pursuant to R.C. Chapter 4112. To establish a claim for wrongful discharge pursuant to the common law tort of wrongful discharge, a plaintiff must demonstrate the following:
 {¶ 17} "That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).
 {¶ 18} "That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
 {¶ 19} "The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
 {¶ 20} "The employer lacked overriding legitimate business justification for the dismissal (the justification element)." Collins v.Rizkana, 73 Ohio St.3d 65, 69-70, 1995-Ohio-135.
 {¶ 21} With respect to her wrongful discharge claim, appellant's complaint tracks the elements of wrongful discharge in violation of public policy and states the following:
 {¶ 22} "Under certain situations, terminating a person's employment because of a disability that was sustained is a violation of the Americans with Disabilities Act of 1990.
 {¶ 23} "Dismissing an employee in a similar situation as the Plaintiff would jeopardize public policy.
 {¶ 24} "The termination of Plaintiff's employment was a result of Defendant Fitton not wanting to employ an individual who would not be able to do secondary duties outside the scope of Plaintiff's employment.
 {¶ 25} "The Defendant Fitton lacked legitimate reasons for terminating Plaintiff's employment, the Plaintiff was able to perform all elements of her position that are associated with her position of managing the pottery studio with the injuries that she had sustained. Moving inventory is not within her supervisory or teaching duties and was not a legitimate excuse for termination."
 {¶ 26} The trial court, in reviewing appellees' motion to dismiss, determined that the foregoing allegations sufficiently stated the clarity, causation, and justification elements of the tort of wrongful discharge in violation of public policy. The court also determined, however, that the jeopardy element was lacking.
 {¶ 27} The trial court reasoned, in accordance with Wiles v. MedinaAuto Parts, 96 Ohio St.3d 240, 2002-Ohio-3994, and Barlow v. AAAA Intl.Driving Sch., Inc., Montgomery App. No. 19794, 2003-Ohio-5748, ¶ 39, that the public policy against disability discrimination in the workplace was not in jeopardy because alternate means of vindicating the policy exist in R.C 4112.02(A). In other words, "there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests." Wiles,96 Ohio St.3d at 244, ¶ 15.
 {¶ 28} On appeal, appellant does not argue that the trial court erred in determining she failed to state a claim for wrongful discharge in violation of public policy. Rather, she contends that the trial court erred by not considering whether her complaint stated a statutory claim for wrongful discharge pursuant to R.C. 4112.02(A).
 {¶ 29} R.C. 4112.02(A) provides: "It shall be an unlawful discriminatory practice [f]or any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, * * * or otherwise discriminate against that person * * *."
 {¶ 30} To establish a cause of action for disability discrimination in violation of R.C. 4112.02(A), a plaintiff must demonstrate the following three elements: (1) that he or she was disabled, (2) that an adverse employment action was taken by an employer, at least in part, because the employee was disabled, and (3) that the employee, though disabled, can safely and substantially perform the essential functions of the job in question. See Hood v. Diamond Products, Inc., 74 Ohio St.3d 298,1996-Ohio-259, paragraph one of the syllabus.
 {¶ 31} A disability is defined in R.C. 4112.01(A)(13) as "a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working * * *." A physical or mental impairment includes "[a]ny physiological disorder or condition" affecting the neurological or musculoskeletal body systems. R.C. 4112.01(A)(16)(a)(i).
 {¶ 32} With respect to a cause of action under R.C. 4112.02(A), appellant's complaint references the Americans with Disabilities Act and alleges that appellees terminated her employment. Further, the complaint alleges the following:
 {¶ 33} Appellant was diagnosed with a "herniated disc and nerve impingement," and she has suffered "serious physical harm, including muscle atrophy and a shortening of the leg."
 {¶ 34} "[T]he responsibilities of her employment centered around managing the pottery studio, instructing classes 6 hours a week and being involved with `Teenworks' 8 hours a week.
 {¶ 35} "With the onset of her injury, the only accommodation needed would have been having someone move boxes of clay for her until her injury healed completely. Such accommodation would have been reasonable."
 {¶ 36} The trial court's order granting the motion to dismiss states "Ohio public policy unquestionably opposes disability-based discrimination in employment. And the complaint states that the Fitton Center, without a legitimate business justification terminated [appellant's] employment because of her disability. The court, however, has difficulty saying that [appellees'] alleged conduct jeopardized the public policy at issue."
 {¶ 37} The trial court's order continues: "In deciding whether the public policy at issue in a particular case is in jeopardy, the court must consider whether there is an alternative means of vindicating a violation of this public policy. Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests." (Internal citations omitted.)
 {¶ 38} However, the trial court did not determine whether or not appellant's complaint stated a claim under R.C. 4112.02(A). Even though appellant did not suggest or argue that her complaint stated a claim under R.C. 4112.02(A), the court was nevertheless required to complete the analysis and determine whether the complaint sufficiently stated a claim under the statute before granting a dismissal under Civ.R. 12(B)(6).
 {¶ 39} Appellees contend that because appellant failed to argue to the trial court that the complaint stated a claim under R.C. 4112.02(A), she cannot now argue for the first time on appeal that her complaint sufficiently states a claim for wrongful discharge under the statute. We disagree.
 {¶ 40} As noted above, a complaint can state a claim upon a legal theory, even when that theory is not suggested, or even intended, by the pleader. Fancher v. Fancher (1982), 8 Ohio App.3d 79, 83. A trial court has a duty to determine whether the facts as alleged in a complaint state a claim under any legal theory. Rogers, 70 Ohio App.3d at 692;Northeast Ohio Regional Sewer District v. Advanced Medical Systems, Inc.
(1995), 106 Ohio App.3d 542, 545. Accordingly, we must remand for the trial court to determine whether appellant's complaint states a claim for wrongful discharge under R.C. 4112.02(A).
 {¶ 41} The first assignment of error is sustained.
 {¶ 42} Appellant contends in her second assignment of error that the trial court erred in granting the motion to dismiss her claim for intentional infliction of emotional distress.
 {¶ 43} The Supreme Court of Ohio has held that, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress * * *." Yeager v. Local Union 20, Teamsters, Chauffeurs,Warehousemen Helpers of Am. (1983), 6 Ohio St.3d 369, syllabus.
 {¶ 44} The Yeager court, in defining extreme and outrageous conduct, borrowed from the Restatement and stated:
 {¶ 45} "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by `malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `outrageous!'" Id. at 374-375.
 {¶ 46} With respect to her claim for intentional infliction of emotional distress, appellant's complaint alleges the following:
 {¶ 47} "Defendant Fitton refused to give Plaintiff a M.C.O. number for therapy, causing treatment to be discontinued and resulting in serious physical harm, including muscle atrophy and a shortening of the leg.
 {¶ 48} "Defendant Fitton knew, or should have known that its actions, mainly terminating Plaintiff's employment, would cause emotional distress.
 {¶ 49} "Defendant's conduct was negligent, extreme and outrageous considering that Plaintiff could have continued working for the Defendant in a limited capacity. Plaintiff was hurt while in the performance of her employment; Defendant terminated her employment once it became knowledge that Plaintiff would not be able to perform ancillary duties fully while recovering from her injuries.
 {¶ 50} "Plaintiff has suffered financial losses, resulting in mental anguish. Plaintiff has been unable to find other similar gainful employment as a result of there being a limited demand for pottery studio managers in this area.
 {¶ 51} "Defendants knew, or should have known, that it was placing Plaintiff in [sic] difficult financial situation upon her termination. Defendant knew, or should have known, that the Plaintiff would not be able to find employment [sic] her professional work that she practiced in the surrounding area.
 {¶ 52} "Such conduct by the Defendant was outside the bounds of decency and can be considered extreme and outrageous, intolerable in a civilized community."
 {¶ 53} In essence, appellant's allegations are that appellees wrongfully terminated her employment, causing her financial hardship; and appellees refused to give her an M.C.O. number for therapy, causing her to suffer physically.
 {¶ 54} We recognize that it can be emotionally stressful for an employee when an employer refuses to co-operate in conjunction with a work-related injury. We also recognize that physical injuries are painful and that losing a job can be stressful. However, merely refusing to assist an employee in obtaining therapy, or merely discharging an employee, even unjustifiably, does not constitute conduct that is "extreme or outrageous" as defined by the Yeager court.
 {¶ 55} We conclude that appellant's allegations, even if proved true, would not amount to conduct that was so extreme and outrageous that it went beyond all possible bounds of decency; nor do they constitute, as a matter of law, conduct that is completely intolerable in a civilized community. Consequently, appellant's second assignment of error is overruled.
 {¶ 56} Appellant contends in her third assignment of error that the trial court erred in dismissing her claim for negligent infliction of emotional distress.
 {¶ 57} Ohio courts do not recognize a separate tort for negligent infliction of emotional distress in the employment context. E.g.,Hatlestad v. Consolidated Rail Corp. (1991), 75 Ohio App.3d 184, 191. Consequently, a plaintiff may recover for emotional harm negligently inflicted by defendant only by bringing a "traditional" claim for negligent infliction of emotional distress.
 {¶ 58} A traditional claim of negligent infliction of emotional distress is limited to instances where a plaintiff has either witnessed or experienced a dangerous accident or appreciated an actual physical peril. Heiner v. Moretuzzo, 73 Ohio St.3d 80, 87, 1995-Ohio-65; Niesselv. Meijer, Inc., Warren App. No. CA2001-04-027, 2001-Ohio-8645. Accordingly, a claim for negligent infliction of emotional distress does not exist where the distress is caused only by the plaintiff's fear of a nonexistent physical peril. Id.
 {¶ 59} With respect to her claim for negligent infliction of emotional distress, appellant's complaint alleges the following:
 {¶ 60} "Defendant Fitton refused to give Plaintiff a M.C.O. number for therapy, causing treatment to be discontinued and resulting in serious physical harm, including muscle atrophy and a shortening of the leg.
 {¶ 61} "The Defendant Fitton lacked legitimate reasons for terminating Plaintiff's employment, the Plaintiff was able to perform all elements of her position that are associated with her position of managing the pottery studio with the injuries that she had sustained. Moving inventory is not within her supervisory or teaching duties and was not a legitimate excuse for termination.
 {¶ 62} "Defendant's conduct was negligent, extreme and outrageous considering that Plaintiff could have continued working for the Defendant in a limited capacity. Plaintiff was hurt while in the performance of her employment; Defendant terminated her employment once it became knowledge that Plaintiff would not be able to perform ancillary duties fully while recovering from her injuries.
 {¶ 63} "Defendant Rick Jones used his authority as Executive Director of Fitton Center of Creative Arts to cause Plaintiff's employment to be terminated.
 {¶ 64} "Defendant Jones knowingly and negligently caused Plaintiff to suffer serious and foreseeable emotional distress as a result of his use of authority to fire Plaintiff from her employment.
 {¶ 65} "Such emotional distress was foreseeable as a result of Plaintiff's cognizance of the peril of not being employed and knowing that future employment was not readily available."
 {¶ 66} The foregoing allegations, taken together and with all reasonable inferences therefrom, fail to allege that appellant either witnessed or experienced a dangerous accident, or appreciated any actual physical peril. Therefore, it was not error for the trial court to grant the motion to dismiss on the claim of negligent infliction of emotional distress. Appellant's third assignment of error is overruled.
 {¶ 67} In sum, appellant's first assignment of error is sustained, and her second and third assignments of error are overruled. Accordingly, we affirm in part, reverse in part, and remand to the trial court for further proceedings according to law and consistent with this opinion.
Young and Bressler, JJ., concur.
[1] Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.
[2] The complaint also alleged a violation of R.C. 4123.90, but appellant voluntarily dismissed this cause of action.